IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) No. 3:20-mj-00238-DMS |
| Plaintiff, | ) |
| vs. | ) |
| MAHMOUD GHASSAN SOUD, | ) |
| Defendant. | ) |

**AFFIDAVIT IN SUPPORT OF COMPLAINT**

Having been duly sworn, the undersigned affirms:

1. I am Special Agent Katherine Nelson of the Federal Bureau of Investigation ("FBI").

2. I began New Agent's Training in September 2018 and have been a Special Agent with the FBI since February 2019, when I completed training at Quantico, Virginia. Immediately following my graduation from New Agent's Training, I was assigned to the Anchorage FBI Field Office on a Joint Terrorism Task Force (JTTF)/Domestic Terrorism squad. As an Agent I have been involved in the execution of search and arrest warrants, to include investigating violations of the illegal transfer and possession of firearms.

3. I submit this affidavit in support of Complaint alleging one count of 18 U.S.C. § 922(g)(8):

MAY 0 5 2020

It shall be unlawful for any person--... who is subject to a court order that--

(A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate;

(B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and

(C)(ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury...

To ... possess in or affecting commerce, any firearm ...

This affidavit is primarily for the purpose of establishing probable cause regarding a violation of 18 U.S.C. § 922(g)(8), by MAHMOUD GHASSAN SOUD ("SOUD") and, therefore, does not recite all information known to me regarding this case.

4. I reviewed the Domestic Violence Protective Order, in case number 3AN-20-00190CI, issued by State of Alaska Judge Polley on March 9, 2020 (the "DVPO"), in which SOUD is the respondent. The DVPO is attached hereto as Exhibit 1 and is incorporated by reference. Having reviewed the DVPO, I submit that it qualifies as an order under 18 U.S.C. § 922(g)(8). The DVPO prohibited SOUD from committing or threatening to commit acts of domestic violence, stalking or harassment. The order is in effect indefinitely, until dissolved by court order. All other provisions of the order are in effect for one year and will expire on March 9, 2021. According to the DVPO, SOUD and his attorney, Rex Lamont Butler, were present in the courtroom for the hearing on March 9, 2020, in which the Court issued

the DVPO. Page 6 of the DVPO includes this Notice:

> 5. If you possess a firearm or ammunition while this order is in effect, you may be charged with a federal offense even if paragraphs (D)(1)(k) and (D)(1)(l) of this order do not prohibit you from possessing these items. [18 USC 922(g)]

5. On or about April 24, 2020, in Anchorage, in the District of Alaska, SOUD was contacted by Anchorage Police Department when a vehicle (referred to below as the "Dakota") was stopped in a lane of traffic and SOUD was acting erratically and approaching other vehicles and appearing to argue with drivers. According to a police report, the following occurred, in which "I" is the first-person account of a police officer:

When I first parked behind the Dakota, I observed SOUD was sitting in the middle of the intersection with Benson Blvd. SOUD stood up, started walking to me, pointed at the sky to the west, and told me to look at the sky. SOUD told me he loved us and then yelled at me "don't be doing this shit because I'm not going to hurt nobody," while taking off his coat. SOUD was acting frantic one moment, aggressive the next moment, and I believed based on my observations SOUD'S actions would be unpredictable. I advised APD Dispatch I believed SOUD was under the influence of some kind of narcotic or having a mental health issue.

SOUD then grabbed his left jacket pocket with his right hand and told me he had a 9mm in his pocket. SOUD raised his hands in the air and told me to take the gun from him. I stepped back from SOUD and waited for additional patrols to arrive on scene before approaching SOUD. I could hear sirens approaching my location and I did not want to attempt to approach SOUD

U.S. v. SOUD
3:20-mj-00238-DMS
3

MAY 0 5 2020

Case 3:20-mj-00238-DMS   Document 1-1   Filed 05/05/20   Page 3 of 6

by myself based on his extremely erratic behavior. Throughout my time with SOUD, I continuously told him just relax and attempted to keep SOUD calm while keeping a safe distance. Ofc. MULVANEY arrived on scene, at which point I approached SOUD and secured a Smith & Wesson M&P 9 Shield from SOUD'S left front jacket pocket and placed it inside my patrol car.

After securing the firearm, SOUD walked back toward the Dakota while pointing at the sky and talking about the Quran. SOUD turned back toward us, told us "listen to me" while pointing at his eyes, and told us he didn't care while walking toward us making other erratic statements. Ofc. MULVANEY gave SOUD a Taser warning while I continued to try and deescalate the situation verbally. SOUD told us he was trying to heal everybody and to look at the light in the sky. Based on SOUD'S extremely erratic behavior, Ofc. MULVANEY and I decided we were going to place SOUD in handcuffs for safety reasons, as we did not know what exactly was going on with SOUD and if he had anymore weapons on him. I approached SOUD on his left side and informed him he was going to be detained, at which point SOUD yelled "what did I do wrong." I instructed SOUD to place his hands behind his back, guided his left hand behind his back, and told him he was going to be placed in handcuffs for his safety and our safety.

As I was exposing SOUD'S left wrist, SOUD tensed his entire upper body up and pulled his arms to the front of his body. I over hooked SOUD'S left elbow with my left arm and under hooked SOUD'S left upper arm with my right arm. I pulled SOUD'S left arm into my body and gained control of SOUD'S left wrist with my left hand. I attempted to take SOUD down to my left side using SOUD'S left arm, but SOUD and Ofc. MULVANEY were locked in mutual headlocks, and subsequently fell to my right. As I fell, I maintained

control of SOUD'S left arm and my right elbow was forcibly driven into the pavement causing pain in my elbow, an abrasion, and my uniform sleeve to rip. The fall also caused small abrasions on both of my knees.

I put my right knee on SOUD'S left thigh while keeping SOUD'S left arm pinned to the ground. I placed a handcuff on SOUD'S left wrist and could hear Ofc. MULVANEY commanding SOUD to get his hand out of Ofc. MULVANEY'S eye. I pulled SOUD'S right arm out from around the right side Ofc. MULVANEY'S head and placed a handcuff on SOUD'S right wrist. I observed Ofc. MULVANEY had blood coming from his nose, small abrasions on the left side of his face near his eye, and Ofc. MULVANEY stated SOUD was trying to gouge his eyes out. I CF/DL SOUD'S handcuffs and located a wallet with ID in SOUD'S left front pant pocket. SOUD continued to make erratic statements about loving us and the sky after he was taken into custody.

6. Anchorage police identified the firearm possessed by SOUD as a Smith & Wesson MP9Shield, Serial #: HXE5063. On or about May 5, 2020, Special Agent Sarah Foreman of the Bureau of Alcohol, Tobacco, Firearms, and Explosives issued a Report of Investigation regarding that firearm, indicating that, based on research conducted, it is the researcher's opinion if the firearm was received and/or possessed in the State of Alaska, it had to have traveled in and affected interstate or foreign commerce as defined in Title 18 U.S.C. § 921(a)(2).

7. This affidavit is true to the best of my knowledge and belief.

//

SOLEMNLY AFFIRMED UNDER PENALTY OF PERJURY on May 5, 2020, in Anchorage, Alaska.

Katherine Nelson
Special Agent, FBI Anchorage



U.S. v. SOUD
3:20-mj-00238-DMS

6